J-A22031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CARLOS TORRES AND ILONA BAIR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| BRENNTAG NORTHEAST, INC.; ARMSTRONG WORLD INDUSTRIES, INC; BARLEY SNYDER, LLP; AND ALAN J. HAY, M.D. | |
| Appellees | No. 1745 MDA 2019 |

Appeal from the Order October 15, 2019
In the Court of Common Pleas of Lancaster County
Civil Division at No: Cl-18-05892

BEFORE:  SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 08, 2021**

Appellants, Carlos Torres and Ilona Bair, appeal a series of pretrial orders sustaining the preliminary objections of Barley Snyder, LLP ("Barley"), and Alan J. Hay, M.D. ("Dr. Hay") and granting the motions for judgment on the pleadings of Appellees, Brenntag Northeast, Inc. ("Brenntag") and Armstrong World Industries, Inc. ("Armstrong").  We affirm.

On July 24, 2018, Appellants filed a complaint against Appellees alleging that Appellant Torres was exposed to certain chemicals manufactured by Brenntag in the course of his employment with Armstrong from 1972 through 2006 and developed Parkinson's disease as a result of this exposure.  He was diagnosed with Parkinson's disease on June 25, 2015.

While the complaint was far from clear, it seemed to allege that Barley, a law firm, was Armstrong's counsel, and that Dr. Hay was Armstrong's employee. The complaint included a count against Barley for fraud and a count against Dr. Hay for breach of physician-patient confidentiality.

All Appellees filed preliminary objections to the complaint. Barley asserted, *inter alia*, that the doctrine of judicial immunity precluded Appellant's claim of fraud. On December 20, 2018, the trial court sustained Barley's and Dr. Hay's preliminary objections, dismissed the complaint against them and ordered Appellants to file an amended complaint.

In early 2019, Appellants filed an amended complaint against Brenntag and Armstrong alleging negligence, product liability and battery claims. Brenntag and Armstrong filed preliminary objections to the amended complaint. The trial court sustained these preliminary objections in part, overruled them in part, and dismissed Appellants' claim against Armstrong for battery.

Brenntag and Armstrong filed answers to the amended complaint with new matter raising the affirmative defenses of, *inter alia*, waiver and the statute of limitations. Appellants filed a reply to new matter. Armstrong and Brenntag filed preliminary objections to Appellants' reply asserting that the reply contained scandalous and impertinent allegations.

On April 23, 2019, the trial court ordered all proceedings in the case stayed. On July 31, 2019, the trial court lifted the stay only to the extent that the parties were permitted to file motions for judgment on the pleadings after

disposition of pending preliminary objections. On August 12, 2019, the court sustained Armstrong's preliminary objections and ordered Appellants to file an amended reply to new matter within twenty days.

On September 9, 2019, Armstrong filed a motion for judgment on the pleadings. On September 11, 2019, Brenntag filed a motion for judgment on the pleadings. On September 11, 2019, Appellants filed an unverified and untimely[1] amended reply to new matter claiming that "[Armstrong's] deliberate acts that concealed [] Torres' and the Torres Family's carcinogenic, neurotoxic and teratogenic exposures tolled the statute of limitations in this action." Amended Reply To New Matter, ¶ 81. On September 20, 2019, Appellants filed a response in opposition to Armstrong's and Brenntag's motions for judgment on the pleadings.

On October 15, 2019, the trial court issued an opinion and order granting judgment on the pleadings to Brenntag and Armstrong on all of Appellants' remaining claims. Appellants timely appealed to this Court, and both Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants raise the following issues in this appeal:

---

[1] Under the trial court's August 12, 2019 order, Appellants' deadline for filing the amended reply to new matter was Tuesday, September 3, 2019, the day after Labor Day. Although the trial court criticized Appellants' tardiness, it still considered the amended reply to new matter into account when it decided Armstrong's and Brenntag's motions for judgment on the pleadings. We will take the same course of action as the trial court, albeit without condoning Appellants' disregard for rules and the amended reply's lack of a verification.

[1.] When it represented documents that it produced to [Appellants] as "exposure and medical records," did [Barley] make false representations concerning an existing fact?

[2.] Did the trial court erroneously dismiss a claim against [Dr. Hay] for breach of the duty of confidentiality imposed upon him, [Armstrong's] physician in charge, by OSHA?

[3.] Does an issue of fact exists as to when Carlos Torres knew or should have known that his exposure to chemicals at work resulted in neurological damage?

[4.] Was the allegation in [Appellants'] complaint that [Armstrong] knowingly exposed him to a toxic substance sufficient to plead a cause of action for battery by exposure to hazardous substances?

[5.] Did the trial court err by granting the motions for judgment on the pleadings before ruling on an outstanding recusal motion?

Appellants' Brief at 10-11.

Appellants first object to the trial court's order sustaining Barley's preliminary objections to the original complaint and dismissing Barley as a defendant. We hold that the trial court properly dismissed Barley, albeit for different reasons than the one given by the trial court.

In determining whether the trial court properly sustained preliminary objections granting a demurrer, we examine the averments in the complaint, together with the documents and exhibits attached thereto, to evaluate the sufficiency of the facts averred. The purpose of the inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. *Donaldson v. Davidson Bros., Inc.,* 144 A.3d 93, 100 (Pa. Super. 2016) citing *Yocca v. Pittsburgh Steelers Sports,*

***Inc.,*** 854 A.2d 425, 436 (Pa. 2004). We will reverse the trial court where there has been an error of law or abuse of discretion. ***Id.*** Because the trial court's decision to grant or deny a demurrer involves a matter of law, our standard of review is plenary. ***Id.***

The original complaint alleged that Torres was exposed to several toxins during his employment with Armstrong from 1972 through 2006, and that he was diagnosed with Parkinson's disease in 2015. The fraud count against Barley alleged that Barley destroyed medical records ("Employee Exposure Medical Records" or "§ .1020 EEMR") in 2014 relating to Torres' exposure to various toxins. Complaint, ¶ 85. At some unspecified point, Torres served Armstrong with a request to produce these records. ***Id.*** at ¶ 89. Barley "intercepted" this request and, at another unspecified point, "responded with intentional and knowingly false statements about the existence of [] Torres' § .1020 EEMR and [Armstrong's] intent to produce [] Torres' § .1020 EEMR." ***Id.*** at ¶ 93. The complaint alleges that this was false because Barley had destroyed these records years earlier in 2014. ***Id.***, ¶¶ 85-86, 91, 93, 96. Appellants claim that they did not discover the cause of Torres' disease until July 2018 because Barley concealed the fact that the § .1020 EEMR had been destroyed. ***Id.*** at ¶ 97.

The elements of fraudulent misrepresentation are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4)

with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).

The trial court held that the original complaint failed to plead fraud because it merely alleged that Barley promised to produce Torres' medical records in the future but failed to do so. The trial court held that this did not give rise to a cause of action because a promise to do something in the future does not constitute fraud. In our view, the complaint did not merely allege that Barley made a promise to perform a future act. The complaint alleged that Barley pretended to provide Torres with full and complete records while fraudulently omitting the fact that it destroyed some or all of Torres' records in 2014.

Nevertheless, we conclude that the action against Barley fails for two different reasons. *See In Re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018) (appellate court may affirm trial court's decision on any basis supported by the record). First, Appellant Torres fails to state a cause of action for fraud, because the complaint only states that Appellant Bair, not Torres, justifiably relied on Barley's alleged false response to Torres' document requests. Second, the doctrine of judicial immunity defeats both Appellants' claims against Barley. The judicial privilege doctrine provides "absolute immunity for communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought."

***Bochetto v. Gibson***, 860 A.2d 67, 71 (Pa. 2004). This privilege extends to statements made prior to judicial proceedings if they are "pertinent and material [to], and . . . issued in the regular course of preparing for, contemplated proceedings." ***Post v. Mendel***, 507 A.2d 351, 356 (Pa. 1986). The judicial privilege often is relevant in defamation cases, but the privilege also bars actions for tortious behavior by an attorney other than defamation. ***Brown v. Delaware Valley Transplant Program***, 539 A.2d 1372, 1374 (Pa. Super. 1988). In this case, Barley's alleged fraudulent communication to Torres took place in anticipation of future judicial proceedings because it concerned his request for medical records. Thus, the judicial privilege doctrine precludes Appellants' action for fraud.

Next, Appellants argue that the trial court erred by sustaining Dr. Hay's preliminary objections to the original complaint and dismissing the count against Dr. Hay for breach of physician-patient confidentiality. We disagree.

The lone count in the complaint against Dr. Hay accused him of breach of physician-patient confidentiality by turning over Torres' medical records to Barley at some unspecified point. ***Id.*** at ¶¶ 99-110. The complaint alleged that Dr. Hay owed Torres a duty under 29 C.F.R. § 1910.1020 to preserve the confidentiality of Torres' medical records but violated this duty by providing the records to Barley. Section 1910.1020 is a part of the Occupational Safety and Health Administration's ("OSHA") mandatory safety and health standards. It requires employers to preserve and maintain employees' medical records

(with certain exceptions) for the duration of employment plus thirty years and employees' records concerning their exposure to toxic substances for thirty years.

It is questionable whether the violation of Section 1910.1020 gives rise to a private right of action. In **Kovacevich v. Regional Produce Cooperative Corporation**, 172 A.3d 80 (Pa. Super. 2017), this Court suggested that OSHA regulations furnish a private right of action when they provide standards of care that the defendant violates, but not when they merely describe OHSA's enforcement policies. **Id.** at 86. In this case, however, we need not analyze which side of the boundary Section 1910.1020 falls within, because Dr. Hay plainly falls outside of the scope of this regulation. Section 1910.1020 only applies to employers, and the original complaint fails to allege that Dr. Hay is an employee or agent of Torres' employer, Armstrong, or even that a physician-patient relationship existed between Dr. Hay and Torres. Accordingly, the trial court properly dismissed Appellants' action against Dr. Hay.

In their third argument, Appellants claim that the trial court erred by granting judgment on the pleadings on Appellants' claims against Armstrong and Brenntag that remained in the amended complaint after the court sustained Armstrong's demurrer to Appellants' claim of battery.[2] The trial

---

[2] Specifically, Count I (negligence), Count III (product liability), Count IV (strict product liability) and Count V (loss of consortium).

- 8 -

court held that Appellants' claims against Armstrong and Brenntag were time-barred under the statute of limitations. Appellants argue that the statute of limitations was tolled because Armstrong "concealed" evidence that Torres was suffering from Parkinson's disease. We conclude that the trial court properly granted judgment on the pleadings to Armstrong and Brenntag.

> Judgment on the pleadings
>
> is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

***Donaldson v. Davidson Bros., Inc.***, 144 A.3d 93, 100-01 (Pa. Super. 2016). Ordinarily, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. ***Integrated Project Services v. HMS Interiors, Inc.***, 931 A.2d 724, 732 (Pa. Super. 2007).

The Judicial Code provides a two-year statute of limitations for personal injury actions, 42 Pa.C.S.A. § 5524, and further provides that the limitation period runs from the time the cause of action accrues. 42 Pa.C.S. § 5502(a). Generally, a cause of action accrues, and the limitations period begins to run, "when an injury is inflicted." ***Wilson v. El-Daief***, 964 A.2d 354, 361 (Pa.

- 9 -

2009). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). The discovery rule is an exception to this rule that tolls the statute of limitations when the plaintiff is reasonably unaware that she has been injured and that her injury has been caused by another party's conduct. *Id.* at 859. A cause of action accrues upon "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Wilson*, 964 A.2d at 364; *see also id.* at n.10.

The discovery rule requires the plaintiff to exercise reasonable diligence in investigating the cause of his injuries. *Id.* at 363 & n.6. The reasonable diligence standard

> is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law. That being said, the objective reasonable diligence standard is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question, and, as such, is to be applied with reference to individual characteristics.
>
> Under this reasonable diligence standard, a plaintiff's actions are examined to determine whether the plaintiff demonstrated those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others. It is the party that asserts application of the discovery rule that bears the burden of proving that reasonable diligence was exercised. Finally, as noted, because the reasonable diligence determination is fact intensive, the inquiry is ordinarily a question for the jury.

*Nicolaou v. Martin*, 195 A.3d 880, 893-94 (Pa. 2018) (citations, quotation marks and ellipses omitted).

To effectively raise the discovery rule as a defense to the bar of the statute of limitations, the plaintiff must either plead facts in the complaint or plead facts raising the discovery rule in response to an affirmative defense asserted as new matter. *Prevish v. Northwest Medical Center*, 692 A.2d 192, 197 (Pa. Super. 1997) (citing *Fox v. Byrne*, 525 A.2d 428 (Pa. Super 1987)). For example, in *Coyne v. Porter-Hayden Co.*, 428 A.2d 208 (Pa. Super. 1981), we affirmed an order granting judgment on the pleadings where the plaintiff merely alleged in her complaint that the nature and the cause of the decedent's injury was unknown, reasoning that the plaintiff "did not properly invoke the discovery rule in her pleadings" because "nowhere in her pleadings did plaintiff allege that she was unaware of and could not discover the nature and cause" of the alleged injury, "plaintiff did not properly invoke the discovery rule in her pleadings." *Id.* at 210.

In this case, Appellants filed their original complaint on July 24, 2018. Since Torres was diagnosed with Parkinson's disease on June 25, 2015, the statute of limitations for personal injury claims expired on June 25, 2017 unless the discovery rule tolled the statute. Appellants have the burden of proving that the statute was tolled until July 24, 2016, two years before they filed their original complaint.

The amended complaint avers that Torres worked for Armstrong between 1972 and 2006, and "while assigned to duty in [Armstrong's] Plastic Mix Department in [its] Lancaster Floor Plant, [] Torres suffered chronic, unprotected exposure to trichloroethylene (TCE), and the TCE, methylene chloride (MC) and methyl ethyl ketone (MEK) fractions in Brenntag's Safety Solvent (hereinafter collectively ("TCE"))." Amended Complaint at ¶ 9. On June 25, 2015, Torres was diagnosed with Parkinson's disease after a neurology referral ruled out a stroke. *Id.* at ¶¶ 11-12. In June 2016, Torres' neurologists ordered a heavy metal screen. *Id.* at ¶ 13. In July 2016, Appellants presented with uncontrolled tremors, confirming his diagnosis of Parkinson's disease. *Id.* at ¶ 14.

The amended complaint avers that "[a]t all relevant times, [Armstrong] withheld [Torres'] Employee Exposure and Medical Records, Employee Personnel File and individually identifiable medical records." *Id.* at ¶ 15. The amended complaint further avers that Armstrong knowingly and intentionally concealed from Torres that he suffered harmful contacts with TCE and the TCE, MC and MEK fractions while employed at Armstrong. *Id.* at ¶¶ 37-39.

Armstrong and Brenntag filed responsive pleadings raising the statute of limitations as an affirmative defense. Appellants filed a reply to new matter alleging the following:

> [Armstrong]'s deliberate acts that concealed [] Torres' and the Torres Family's carcinogenic, neurotoxic and teratogenic exposures tolled the statute of limitations in this action. *Wilson v. El-Daief*, [] 964 A.2d 354, 361-62 (Pa. 2009) (explaining that,

per application of the discovery rule, the statute of limitations is tolled until an injured party discovers or reasonably should discover, (1) that she has been injured and (2) that her injury has been caused by another party's conduct[)].  In addition, as a direct and proximate result of [Armstrong]'s deliberate and intentional acts that concealed [] Torres' chronic, unprotected carcinogenic, neurotoxic and teratogenic occupational exposures in [Armstrong]'s Lancaster Floor Plant, [] Torres and the Torres Family continued to suffer chronic, unprotected exposures to the carcinogens, neurotoxins and teratogens in the Torres Family Home as a direct and proximate result . . . of the carcinogens, neurotoxins and teratogens that contaminated [] Torres' clothing and skin while assigned to duty in [Armstrong]'s Floor Plant and which were off-gassed into the ambient environment in the Torres Family Home.

Appellants' Reply to Armstrong's New Matter, ¶ 81.

In September 2019, Armstrong and Brenntag filed motions for judgment on the pleadings.  Appellants filed a response to these motions in which they stated:

In this case, in 2017, [Torres] presented with symptoms of neurological dysfunction.  At the time that [Torres] developed neurological symptoms, the etiology of [his] neurological dysfunction was unknown.  To rule out [Torres'] toxic exposures in [Armstrong's] Lancaster Floor Plant as the cause of [his] neurological dysfunction, on January 4, 2017, [Torres] served a § .1020(a) request on Lisa Williams, [Armstrong's] EHS Manager, to obtain [Torres'] EEMR.

Appellants' Resp. Mot. Jt. Pleadings, at 5.

Attached to Appellants' response were several documents: (1) a fourteen-page letter dated January 4, 2017 from Appellant's attorney to Armstrong's EHS Manager, Lisa Williams, requesting Torres' medical records and records relating to his exposure to TCE, MC and MEK in Armstrong's floor plant; (2) a cover letter from Armstrong's attorney to Torres dated February

8, 2017, stating that Torres' employee exposure and medical records were enclosed; and (3) Torres' affidavit that when he was diagnosed with Parkinson's disease, no physician told him that work-related exposure caused it, and he did not become aware of the connection between work-related exposure and his disease until 2018. Since Appellants did not append these documents to their pleadings, the trial court was not required to take them into consideration when deciding the motions for judgment on the pleadings. *Integrated Project Services*, 931 A.2d at 732. Nevertheless, the trial court treated them as if they were appended to the pleadings, so we will do the same.

Based on this record, we agree with the trial court's decision to grant judgment on the pleadings to Armstrong and Brenntag. Appellants attempt to evade the statute of limitations with several vague assertions in their pleadings that Armstrong "concealed" Appellants' exposure to various toxins or "withheld" Appellants' personnel and medical records. Appellants' pleadings, however, are devoid of factual averments that support this claim. Appellants' amended complaint and amended reply to new matter fail to aver (1) what, if any, efforts Appellants made to determine the cause of Torres' disease following his diagnosis in June 2015, (2) what, if any, efforts Appellants made following Torres' diagnosis to obtain Torres' personnel or medical records, (3) what information Armstrong concealed in Torres' records,

- 14 -

or (4) what information in Torres' records substantiated Appellants' claims against Armstrong or Brenntag.

Nor do the exhibits in Appellants' response to Armstrong's and Brenntag's motions for judgment on the pleadings demonstrate concealment or withholding. The first exhibit, the January 4, 2017 letter from Appellants' attorney to Armstrong, requests Torres' medical records relating to his exposure to various toxic chemicals—the same chemicals that Appellants' original and amended complaints allege caused him to develop Parkinson's disease. Nothing in this letter suggests, explicitly or implicitly, that Appellants made any effort prior to January 4, 2017 to obtain Torres' files, or that Armstrong concealed these files prior to January 4, 2017. The second exhibit, the February 8, 2017 cover letter from Armstrong's counsel, does not indicate that Armstrong concealed any records. To the contrary, the letter indicates that Armstrong produced all records that were responsive to Appellants' attorney's request. The third exhibit, Torres' affidavit, merely states that he did not learn that his disease was work-related until 2018. Nothing in his affidavit suggests that Armstrong knew his disease was work-related or concealed this fact from him.

For these reasons, Appellants failed to fulfill their burden of demonstrating that the discovery rule tolled the statute of limitations. We therefore affirm the trial court's order granting judgment on the pleadings against Appellants and in favor of Armstrong and Brenntag.

Next, Appellants claim that the amended complaint states a valid cause of action against Armstrong for the intentional tort of battery by exposing Torres to toxic chemicals during the course of his employment. We need not address this argument, because we have determined above that the trial court properly granted judgment on the pleadings against Appellants on all claims against Armstrong under the statute of limitations.

Finally, Appellants complain that the trial court erred by failing to decide Appellants' motion for recusal before entering judgment on the pleadings in favor of Armstrong and Brenntag.

This argument has some superficial appeal. Two weeks before the trial court granted judgment on the pleadings to Armstrong and Brenntag, Appellants filed a motion requesting the trial judge to recuse himself. We have held that when a party files a motion for recusal, the most prudent course of action is for the trial court to decide the recusal motion before deciding any substantive motions. *In re Bridgeport Fire Litig.*, 5 A.3d 1250, 1257 (Pa. Super. 2010).

Even though the trial court should have decided the motion for recusal first, we decline to award relief on this ground. Appellants make no attempt in their brief to explain **why** the trial judge should have recused himself. Appellants' Brief at 65-66. Thus, we have no reason to conclude that the trial court's procedural error prejudiced Appellants.

For these reasons, we affirm the order sustaining the preliminary objections of Barley and Dr. Hay and the order granting judgment on the pleadings to Armstrong and Brenntag.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/08/2021